No. 26-1713

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

ActBlue LLC; ActBlue Civics, Inc.; ATS, Inc.;
ActBlue Charities, Inc.,

*Plaintiffs-Appellees,*

*v.*

Warren Kenneth Paxton, Jr., in the official capacity as
Attorney General of the State of Texas,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

# BRIEF FOR *AMICI CURIAE* MASSACHUSETTS, CALIFORNIA, NEVADA, NEW MEXICO, OREGON, VERMONT, AND WASHINGTON IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
David C. Kravitz*
*State Solicitor*
One Ashburton Place
Boston, MA 02108
david.kravitz@mass.gov
(617) 963-2427
**Counsel of Record*
*Additional counsel listed on signature page*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTEREST OF *AMICI CURIAE* .......... 1

ARGUMENT .......... 3

I. *Younger*'s bad faith exception does not depend on a finding that the state court proceeding was brought with no hope of success. .......... 3

II. The sky will not fall if this Court affirms the District Court's order. .......... 6

CONCLUSION .......... 9

CERTIFICATE OF COMPLIANCE .......... 11

# TABLE OF AUTHORITIES

## Cases

*Am. Acad. of Pediatrics v. Uthmeier*, No. 26-2238, __ F.4th __,
2026 WL 2686175 (7th Cir. Sept. 14, 2026) (*en banc*)....................................2

*Brooks v. N.H. Supreme Court*, 80 F.3d 633 (1st Cir. 1996)....................................2

*Commonwealth v. Meta Platforms, Inc.*, 497 Mass. 384, 277
N.E.3d 166 (2026) ....................................................................................1

*Commonwealth v. Exxon Mobil Corp.*, 489 Mass. 724, 187 N.E.3d
393 (2022)..............................................................................................1

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) ......................................................4, 7

*Department of Commerce v. New York*, 588 U.S. 752 (2019)..................................6

*Fitzpatrick v. Peek*, 636 F.2d 943 (5th Cir. 1981) .....................................................4

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ..................................................... 2-3

*Lewellen v. Raff*, 843 F.2d 1103 (8th Cir. 1988) .....................................................4

*Matal v. Tam*, 582 U.S. 218 (2017) ........................................................................8

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457
U.S. 423 (1982)...................................................................................... 1-2

*National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 (2024) .................................. 8-9

*Sirva Relocation, LLC v. Richie*, 794 F.3d 185 (1st Cir. 2015)............................4, 8

*Yelp Inc. v. Paxton*, 137 F.4th 944 (9th Cir. 2025)........................................... 4-6, 8

*Younger v. Harris*, 401 U.S. 37 (1971)..........................................................*passim*

## INTEREST OF *AMICI CURIAE*

The *Amici* States (Massachusetts, California, Nevada, New Mexico, Oregon, Vermont, and Washington),[1] like the States that joined the *amicus curiae* brief filed by Indiana (the "Indiana *amici*"), have a strong interest in "protect[ing]" their residents from "unfair, misleading, deceptive, abusive, or otherwise improper conduct." Indiana Br. at 1; *see also id.* at 12 ("State Attorneys General from both political parties regularly initiate actions under consumer protection, licensing, and antitrust laws to protect people from harm."). *Amici* States, like the Indiana *amici*, further that interest by initiating a wide variety of investigations and enforcement actions, often pursuant to state consumer protection laws. *See, e.g.*, *Commonwealth v. Meta Platforms, Inc.*, 497 Mass. 384, 388, 277 N.E.3d 166, 171 (2026); *Commonwealth v. Exxon Mobil Corp.*, 489 Mass. 724, 724-25, 187 N.E.3d 393, 394 (2022). And *Amici* States, again like the Indiana *amici*, support the "strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

But the caveat in the *Middlesex County* quotation—"absent extraordinary circumstances"—is important. As the District Court correctly recognized (and as appellant and the Indiana *amici* agree, *see* Paxton Br. at 17-18; Indiana Br. at 4-5),

---

[1] *Amici* States file this brief as of right pursuant to Fed. R. App. P. 29(a)(2).

there has always been a "bad faith" exception to the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). The reason for that exception is to afford a remedy in those rare cases where state officials have abused the authority that is entrusted to them. *See Am. Acad. of Pediatrics v. Uthmeier*, No. 26-2238, 2026 WL 2686175, at *1 (7th Cir. Sept. 14, 2026) (*en banc*) (Hamilton, J., concurring) ("The [bad faith] exception is, however, a critical feature—a constitutional safety valve, if you will—in the federalism balance in *Younger* doctrine."). As state officials ourselves, we recognize the importance of exercising state authority responsibly.

*Amici* States emphasize—as do the Indiana *amici*, and as did the District Court—that the bad-faith exception to *Younger* abstention is "narrow." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); *see also* Add. 08 (describing the bad faith exceptions as "very narrow in scope").[2] We strongly support "the basic presumption that state courts are fully capable of safeguarding federal constitutional rights," *Brooks v. N.H. Supreme Court*, 80 F.3d 633, 639 (1st Cir. 1996), and that federal intervention in ongoing state proceedings should be the very unusual exception, justified only in "extraordinary circumstances," *Middlesex County*, 457 U.S. at 431. A decision from this Court upholding that basic

[2] Citations to "Add. *x*" are to page *x* of the Addendum to the defendant-appellant's brief, which reproduces the District Court's opinion.

presumption, and also affirming the longstanding principle that abuse of governmental authority in the form of a harassing or retaliatory state court enforcement action may justify a federal court's intervention, would not break new ground, nor would it threaten the dire consequences that the Indiana *amici* fear. *See* Indiana Br. at 12 (arguing that "the district court's approach to *Younger* threatens to upend the federalist structure and restrict States' ability to protect their citizens").

## ARGUMENT

### I. *Younger*'s bad faith exception does not depend on a finding that the state court proceeding was brought with no hope of success.

The argument advanced by appellant and by the Indiana *amici* largely proceeds on the false premise that *Younger*'s bad-faith exception applies *only* when the state court action is patently frivolous, that is, that it was initiated without any hope of success. *See* Indiana Br. at 4-7, 11; *see also* Paxton Br. at 22 ("*Younger*'s bad-faith exception requires that the state-court proceeding be 'without hope' of success."). But the Supreme Court has explained that *Younger* abstention is not required "where the District Court properly finds that the state proceeding [1] is motivated by a desire to harass *or* [2] is conducted in bad faith, *or* [3] where the challenged statute is flagrantly and patently violative of express constitutional prohibitions…." *Huffman*, 420 U.S. at 611 (numbering and emphasis added; internal quotation marks omitted). Similarly, as this Court has explained,

"[a]bstention is inappropriate, for example, when a state proceeding is brought in bad faith, that is, *for the purpose* of harassment." *Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192 (1st Cir. 2015) (emphasis added). And other federal courts of appeals have recognized that when a state prosecution was brought "in retaliation for or to discourage the exercise of constitutional rights," federal intervention may be appropriate "'regardless of whether valid convictions conceivably could be obtained.'" *Lewellen v. Raff*, 843 F.2d 1103, 1109-10 (8th Cir. 1988) (quoting *Fitzpatrick v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981)); *see also, e.g.*, *Yelp Inc. v. Paxton*, 137 F.4th 944, 953 (9th Cir. 2025) ("[T]he harassment indicative of bad faith could include filing state court litigation in retaliation for the exercise of constitutionally protected rights."); *Cullen v. Fliegner*, 18 F.3d 96, 103-04 (2d Cir. 1994) ("[A] showing of retaliatory or bad faith prosecution establishes irreparable injury for the purposes of the *Younger* doctrine, and the expectations for success of the party bringing the action need not be relevant." (citations omitted)). Thus, whether or not initiation of a frivolous state court action that has no hope of success could be a *sufficient* basis for finding bad faith under *Younger*, it is not a *necessary* one.

Here, then, the District Court was not required to (and did not, at least not expressly) conclude that the Texas state court action has no hope of success under Texas law before exercising jurisdiction. While the District Court expressed

misgivings about the merits of the state court action, *see* Add. 09 (noting that "the theory of harm underlying the consumer fraud claims rings hollow"); Add. 010-011 (doubting that "the speech at issue here … can reasonably be considered 'commercial' such that it falls within the scope of the [Texas law]"), its bad-faith analysis also relied on factual issues specific to this case that, taken together, led the court to conclude that appellant acted out of an intent to harass and retaliate.

As to the factual issues, appellant and the Indiana *amici* object to the district court's reliance on appellant's public statements, invoking the general principle that "state Attorneys General and other state officials are entitled to have enforcement priorities and policy positions." *Yelp*, 137 F.4th at 955-56; *see* Indiana Br. 13-15; Paxton Br. 31-32. But that principle—with which *Amici* States strongly agree—does not automatically insulate a state official from the conclusion that a proceeding is initiated in bad faith. *See infra* at 7-9 (discussing the government speech doctrine). And the District Court noted that several of the statements upon which it relied as evidence of bad faith were made in connection with ActBlue's support for Paxton's Democratic opponent for the United States Senate. *See, e.g.*, Add. 012 (noting Paxton's reference to ActBlue's having raised "'eye-popping sums online' for [Paxton's Democratic opponent]").

Cases like *Yelp* therefore do not help appellant's or the Indiana *amici*'s position, because in *Yelp* the public statements alleged to reveal retaliatory

motivations reflected only "the commonplace stridency of prosecutorial press releases," along with a public official's "enforcement priorities and policy positions." *Yelp*, 137 F.4th at 956. Those factors, *Amici* States strongly agree, are not enough to establish an improper retaliatory motivation. *See id.* (noting that state court "actions do not become automatically retaliatory whenever they touch on hot-button issues"). But where an official has targeted an entity for enforcement action *because of* that entity's support for the official's political opponent in a race for a different office, legitimate questions of retaliation may arise. And, in assessing such evidence, courts "are not required to exhibit a naiveté from which ordinary citizens are free." *Department of Commerce v. New York*, 588 U.S. 752, 785 (2019) (internal quotation marks omitted).

## II. The sky will not fall if this Court affirms the District Court's order.

The Indiana *amici*'s "deep concern," Indiana Br. 15, about the consequences of affirmance in this case is misplaced. This case presents a highly unusual set of facts that set it apart from the more typical case where a state court defendant has a plausible constitutional defense to an enforcement action and may "infer some degree of selectivity from state enforcement actions or prosecutions," *Yelp*, 137 F.4th at 953. Here, the district court emphasized that the timing of the enforcement action is highly suggestive of retaliatory motivation, as on two separate occasions important escalations in the state enforcement activity against ActBlue followed

immediately on the heels of public announcements that appellant's Democratic opponent in the Senate race had raised large amounts of money via ActBlue. *See* Add. 08-09. Appellant also publicly and repeatedly justified the enforcement action not as a matter of consumer protection, but as a matter of harming the ability of Democratic candidates—specifically including appellant's Democratic opponent—to raise money via ActBlue. *See* Add. 011-012.

Considering the totality of the circumstances, the District Court concluded that "[t]he lawsuit was filed in retaliation for (and in an attempt to suppress) ActBlue's efforts to fund [Paxton's Democratic opponent]'s campaign," and that "the evidence of bad faith is sufficiently overwhelming to qualify this as one of the rare cases where the exception should apply." Add. 08, 012. Those conclusions are reviewed for clear error. *See, e.g.*, *Cullen*, 18 F.3d at 104. And given the highly unusual constellation of facts presented here, affirmance of the District Court seems unlikely to open the door to expanded federal court oversight of state court enforcement actions—nor, in *Amici* States' view, should it.

Finally, Indiana *amici*'s heavy reliance on government speech cases, *see* Indiana Br. 15-17, is misplaced. *Amici* States fully endorse the general proposition that government officials are free to express their opinions on issues of public concern, sometimes in forceful language—and that they may exercise the authority of their offices accordingly. As the Supreme Court has explained, "[w]hen a

government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others. The Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about that venture." *Matal v. Tam*, 582 U.S. 218, 234 (2017). Thus, as the Ninth Circuit has recognized, "[i]f an enforcement action consistent with [a state official]'s policy direction were enough to establish a retaliatory motive, state courts would regularly be stripped of their authority at the hands of federal injunctions—directly contrary to *Younger*'s overarching message of respect for state courts." *Yelp*, 137 F.4th at 956.

But the government speech doctrine has little application on the facts presented here, for at least two reasons. First, enforcement action intended to further a policy position is different in kind from enforcement action intended to retaliate against or harass an entity *because of* that entity's exercise of constitutional rights. *Cf. National Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 196 (2024) ("[A]lthough [a state official] can pursue violations of state insurance law, she cannot do so in order to punish or suppress [petitioner]'s protected expression."). The latter is precisely the kind of case that this Court has recognized makes *Younger* abstention inappropriate. *See, e.g.*, *Sirva*, 794 F.3d at 192 ("Abstention is inappropriate, for example, when a state proceeding is brought in bad faith, that is, *for the purpose* of harassment.") (emphasis added). And it will

be a factual question whether a particular enforcement action falls into the former or latter category, with the federal-court plaintiff of course having the burden to show that the state-court proceeding is not entitled to the usual presumption of regularity. Second, the government speech doctrine affords no protection to state officials who abuse the power of the office they currently hold in order to harass or punish their political opponents. *See Vullo*, 602 U.S. at 196; *Eagle Point Educ. Ass'n v. Jackson County Sch. Dist. No. 9*, 880 F.3d 1097, 1100 (9th Cir. 2018) ("The government speech doctrine does not authorize the government's suppression of contrary views."). And, again, it will be a factual question whether the facts of any particular case fit that description.

## CONCLUSION

The order of the District Court should be affirmed.

Respectfully submitted,

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*

*<u>/s/ David C. Kravitz</u>*
David C. Kravitz*
*State Solicitor*
One Ashburton Place
Boston, MA 02108
david.kravitz@mass.gov
(617) 963-2427
**Counsel of Record*

Dated: October 1, 2026

ROB BONTA
*Attorney General of California*
1300 I Street
Sacramento, CA 95814

AARON D. FORD
*Attorney General of Nevada*
100 North Carson Street
Carson City, NV 89701

RAÚL TORREZ
*Attorney General of New Mexico*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, NM 87501

DAN RAYFIELD
*Attorney General of Oregon*
1162 Court Street NE
Salem, OR 97301

CHARITY R. CLARK
*Attorney General of Vermont*
109 State Street
Montpelier, VT 05609

NICHOLAS W. BROWN
*Attorney General of Washington*
P.O. Box 40100
Olympia, WA 98504

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B), because it contains 2,044 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman style, 14-point font.

/s/ David C. Kravitz
*Counsel of Record*